UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
LUIS ALBERTO, on behalf of himself, FLSA :
Collective Plaintiffs and the Class, :
                                                         :
                                                         :           **MEMORANDUM DECISION**
                                       Plaintiff,        :           **AND ORDER**
                                                         :
                    - against -                          :           18-cv-4762 (BMC)
                                                         :
RICO POLLO #2 RESTAURANT CORP. d/b/a/ :
RICO POLLO, ABC CORP. d/b/a RICO :
POLLO, JUAN F. PUNTIEL, CLEMENTE DE :
LA CRUZ, and JOHN DOE #1-10, :
                                                         :
                                       Defendants.       :
-------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff brings this action under the Fair Labor Standards Act ("FLSA") and the New

York Labor Law ("NYLL"), seeking to represent both a collective and a class of similarly

situated employees. Plaintiffs have moved for conditional certification of a putative collective

under § 216(b) of the FLSA. Plaintiffs' motion is substantially granted for the reasons set forth

below.

## BACKGROUND

There are two restaurants named as defendants in this suit, both operating under the name

"Rico Pollo," but owned by separate defendant corporations, and, according to defendants, each

corporation is wholly owned by one of the two individual defendants. Plaintiff was a delivery

person for one of the restaurants, the Queens restaurant, from about May 1, 2016 until about May

7, 2018. The other restaurant is in Brooklyn.

In his affidavit in support of his motion, plaintiff states that he worked for 10.5 hours per day, six days a week, for a total of 63 hours. He was paid a fixed salary of $360 in cash weekly, regardless of hours worked. In addition to delivering orders to customers, plaintiff prepared food, cleaned the restaurant, washed dishes, and did some janitorial or porter-like tasks. He describes these tasks as "non-tipped" work – in contrast to his delivery work – and estimates that the non-tipped work was more than 20% of his typical workday. He never received any advice as to how tips he received would factor into his compensation, and he never received any wage statements or notices about wages and hours.

Like most FLSA motions for a collective, this one depends primarily on averments in plaintiff's affidavit describing his view of how defendants operated the restaurants and how defendants treated other employees. Those statements are as follows:

- Throughout my employment with Defendants, I regularly observed and spoke with my coworkers about our wages and work. Such co-workers include, but are not limited to:

| Name | Position | Location | Pay Method |
|------|----------|----------|------------|
| Domingo | Porter | Queens | Fixed salary |
| Jorge | Delivery | Queens | Fixed salary |
| Rei | Chef | Both Locations | Fixed salary |
| Sofirio | Delivery | Both Locations | Fixed salary |
| Rony | Delivery | Both Locations | Fixed salary |

- After receiving our pay check each Monday, my co-workers (including those listed above) and I would complaint [sic] to each other at work about how we were paid. Domingo and Jorge told me that they were paid fixed salary regardless of how many hours they worked. We were afraid to complaint [sic] to managers because we do not want to lose our jobs. I spoke to other delivery people (including those listed above) and they told me that all of them were paid the same $360 fixed salary per week, and were not paid proper overtime compensation for hours worked in excess of forty (40) hours per week.

- Defendants frequently transferred employees from the other location to fill in. I heard Rei who was transferred from the Fulton location said [sic] that he was paid fixed salary for all hours worked. Sofirio and Rony also worked at the Fulton

location and told me that the employees there were paid at a fixed salary for all hours worked. … Defendants maintained centralized human resources and a single payroll system for all employees at all locations.

- Based on my personal observation and conversation with other employees, other employees at Defendants' Rico Pollo Restaurants (including, but not limited to individuals listed [above]) worked the same or similar hours that regularly exceeded 40 hours per week.

- Based on my personal observations and conversations with co-workers, other non-managerial employees at Defendants' Rico Pollo Restaurants (including, but not limited to [the] individuals listed [above]) were also not paid overtime compensation for hours worked in excess of forty (40) hours per week.

- Based on my observations and conversations with other tipped employees, including but not limited to those listed [above], tipped employees similarly spent at least twenty percent (20%) of their workdays performing such non-tipped activities.

- Based on my personal observations and conversations with other employees, including but not limited to those listed [above], no employee employed by Defendants at the Rico Pollo Restaurants ever received written wage and hour notice[s].

- Based on my personal observations and conversations with other employees, including but not limited to those listed [above], no employee employed by Defendants at the Rico Pollo Restaurants ever received wage statement[s].

The individual defendants, Clemente De La Cruz and Juan F. Puntiel, have submitted their own affidavits. They explain that although they were originally partners in the Queens restaurant, Mr. De La Cruz bought out Mr. Puntiel in 2012, leaving Mr. De La Cruz as the sole owner. Mr. Puntiel then opened the Brooklyn restaurant shortly thereafter as the sole owner. They disavow any involvement in the operations of their co-defendant's restaurant, and profess to have sole responsibility for operating each respective restaurant and its payroll practices. They also assert that the other employees that plaintiff names never worked for the Brooklyn restaurant, and deny sharing employees except for Sofirio (see chart above), who handled deliveries for the Brooklyn restaurant during renovations of the Queens restaurant over a four-month period.

**DISCUSSION**

**I.     Legal Framework**

Section 216(b) of the FLSA creates a private right of action for employees to recover

unpaid minimum wage and overtime compensation on behalf of themselves and similarly

situated employees.  Similarly situated employees must opt into the collective action by filing

their written consent with the Court before they may proceed as plaintiffs.  See 29 U.S.C. §

216(b).  Thus, district courts have discretion to facilitate a notice process by which potential

plaintiffs are informed of the pendency of an FLSA action that they might join to adjudicate their

rights.  See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989).

Consistent with this discretion to facilitate notice, courts in the Second Circuit conduct a

two-step process to determine whether to certify a collective action under the FLSA.  See Myers

v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010).  "The first step involves the court making an

initial determination to send notice to potential opt-in plaintiffs who may be similarly situated to

the named plaintiffs with respect to whether a FLSA violation has occurred."  Id. (internal

quotation marks and citations omitted).  This step requires plaintiffs to "make a modest factual

showing that they and potential opt-in plaintiffs together were victims of a common policy or

plan that violated the law."  Id. (internal quotation marks and citations omitted).  "[T]he focus of

the inquiry is not on whether there has been an actual violation of law but rather on whether the

proposed plaintiffs are similarly situated under 29 U.S.C. § 216(b) with respect to their

allegations that the law has been violated."  Romero v. La Revise Assocs., L.L.C., 968 F. Supp.

2d 639, 645 (S.D.N.Y. 2013) (internal quotations marks and citations omitted).

"At the second stage, the district court will, on a fuller record, determine whether a so-

called collective action may go forward by determining whether the plaintiffs who have opted in

are in fact similarly situated to the named plaintiffs." Myers, 624 F.3d at 555 (internal quotation marks and citations omitted). "The action may be de-certified if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." Id. (internal quotation marks and citations omitted).

Plaintiffs' motion concerns only the first step of this process. "The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." Puglisi v. TD Bank, N.A., 998 F. Supp. 2d 95, 99 (E.D.N.Y. 2014).

## II.    Collective Action

Labeling the averments in plaintiff's affidavit as "conclusory," defendants' repetitive briefing offers what distills into two reasons for not recognizing a collective action here, specifically, that plaintiff has not shown that (1) employees at either restaurant were subject to a common illegal practice in paying their wages or that (2) the employees at the Brooklyn restaurant were paid under the same policy as the Queens restaurant. I disagree.

It is true that some of plaintiff's allegations are conclusory, e.g., "Defendants maintained centralized human resources and a single payroll system for all employees at all locations." I don't see how plaintiff knows that. If he is drawing an inference from his conversations with other employees, then there is an insufficient description of those conversations to support such an inference. If the inference is supportable by other observations that plaintiff has made, one wonders why those observations are not in his affidavit. For example, what does he know about the "payroll system" in a business in which he and his colleagues were all paid in cash? (Indeed, one wonders whether there even was a "payroll system.") Is there some single person to whom he or his colleagues have spoken about problems they encountered at both restaurants, so as to

support his conclusion that the two restaurants have a common and "centralized human resources" system?

In addition, a court has to be skeptical when the affidavit of a wage laborer like plaintiff throws around terms that were plainly chosen by the plaintiff's lawyer. I don't think most kitchen and delivery workers regularly use terms like "centralized human resources." Imagine a conversation between a new delivery person and an experienced one: "hey, Joe, I only work at the Queens restaurant, why did the boss tell me to talk to someone at the Brooklyn Restaurant about changing my shift?" "Oh, that's because the two restaurants maintain *centralized human resources*." I doubt it.

But despite a sprinkling of these kind of lawyer-composed conclusory assertions, there is sufficient detail in plaintiff's affidavit to warrant a collective. If we are going to allow hearsay on these motions – and the dominant view in this Circuit is that we do, see e.g., Ramos v. Platt, No. 13-cv-8957, 2014 WL 3639194, at *2 (S.D.N.Y. July 23, 2014) – then plaintiff has relayed enough of it to make the modest showing that the law requires. Specifically, he has spoken to at least five other workers, whose first names he has provided, and all of whom say they were paid a fixed wage just like him. Those workers have three different job titles, so plaintiff's experience is applicable to some titles other than delivery person (at least, as discussed below, others within the three titles he has identified).

As to the ability to treat the two restaurants as one for purposes of this first step, what is most significant is that three of the five workers have worked at both restaurants. I reject defendants' effort to dispute plaintiff's averments by claiming that it was only one worker who overlapped for a short time and for an unusual reason. First, the modest showing required for a collective means that at step one, the court should credit the plaintiff's averments rather than

resolve factual disputes between the parties. Second, if defendants are going to submit affidavits in opposing a first step motion, which they didn't have to do, they should submit affidavits that, unlike those here, answer more questions than they leave unanswered.

Defendants' affidavits do not deny, for example, that delivery people, chefs and porters were all paid a fixed wage in cash at both restaurants, but merely allege that each paid its employees "according to the pay practice" at each restaurant – whatever that was or those were. Similarly, although defendants criticize plaintiff's affidavit as "conclusory," the two individual defendants' identically-worded averments that "I am not involved in the operations of" the other restaurant do not explain how it came about that Sofirio was loaned by one restaurant to the other, which they admit, even if it was for only two occasions. The only suggestion that might support some inference is the equally conclusory statement that Mr. Puntiel (regularly? we are not told) visits Mr. De La Cruz's business because they are "friends." But friends do not share employees; that's business.

The only valid point that defendants raise is that plaintiff's proposed collective of "non-management" employees is too vague. There are cases too numerous to cite, including in the restaurant context, as to which employees constitute "management." See e.g., Elghourab v. Vista JFK, LLC, No. 17-cv-911, 2018 WL 6182491 (E.D.N.Y. Nov. 27, 2018); Scott v. Chipotle Mexican Grill, Inc., No. 12-cv-8333, 2017 WL 1287512 (S.D.N.Y. Mar. 29, 2017); Karropoulos v. Soup du Jour, Ltd., 128 F.Supp.3d 518 (E.D.N.Y. 2015). The Court is not going to lay the groundwork for later litigation over which employees should receive notice and which should not. Since, despite his conversations with fellow employees, plaintiff can only identify delivery

persons, chefs, and porters as similarly situated employees, the notice will be limited to those positions.[1]

### III.     Applicable Period and Equitable Tolling

The statute of limitations for potential plaintiffs' FLSA claims in this case is three years if the conduct was willful and two years if it was not.  See 29 U.S.C. § 255(a).  Defendants complain that plaintiff has failed to sufficiently allege willfulness.  I again disagree.  Plaintiffs do not have to prove willfulness at this stage, and if the payments in fixed amounts of cash on a weekly basis without credit for overtime are in fact reflective of a policy and practice of defendants, it is hard to imagine a lack of willfulness.  We are not dealing with some obscure provision of labor law; every business owner knows or clearly ought to know of the obligation to pay overtime for more than 40 hours' work.

Plaintiffs have also asked the Court to equitably toll the statute of limitations until notice is sent to the members of the collective.  "In a FLSA collective action, the statute of limitations runs for each plaintiff until he files written consent with the court to join the lawsuit."  Yahraes v. Rest. Assocs. Events Corp., No. 10-CV-935, 2011 WL 844963, at *1 (E.D.N.Y. Mar. 8, 2011). The statute of limitations is not tolled upon the filing of the complaint, as it is in a class action, and opt-in plaintiffs' consent forms do not relate back to the filing of the complaint.  As a result, "[i]f the limitations period is not [] tolled, opt-in plaintiffs would not be able to make claims for any period prior to three years from the date they actually file a consent to join the action." Contrera v. Langer, 278 F. Supp. 3d 702, 722-23 (S.D.N.Y. 2017) (citing 29 U.S.C. § 256(b)); Yahraes, 2011 WL 844963, at *1.

---

[1] Because of the substantial expense for an employer in seeking to de-certify a collective at stage 2, this Court rigorously enforces the requirements of Federal Rule of Civil Procedure 11 against a plaintiff's counsel if it becomes apparent through discovery that there was no good-faith basis for seeking a collective action at stage 1.

However, "[f]ederal courts should grant equitable tolling sparingly, and only in rare and exceptional circumstances." Id. at *1 (internal quotation marks, alterations, and citations omitted). "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) 'has acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 80–81 (2d Cir. 2003) (citing Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 512 (2d Cir. 2002)).

Courts in this Circuit have denied requests for equitable tolling where plaintiffs rely only on defendants' failure to notify plaintiffs of their rights, "as it would provide for equitable tolling whenever a defendant violated FLSA and NYLL by failing to post notices or provide statements of hours and wages." Shu Qin Xu v. Wai Mei Ho, 111 F. Supp. 3d 274, 279 (E.D.N.Y. 2015); see also Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 480 (S.D.N.Y. 2008) ("To hold that 'a failure to disclose that an employee is entitled to overtime pay is sufficient to work an equitable toll would be tantamount to holding that the statute is tolled in all or substantially all cases seeking unpaid overtime.'") (quoting Patraker v. Council on the Env't of New York City, No. 02 Civ. 7282, 2003 WL 22703522, at *2 (S.D.N.Y. Nov. 17, 2003)). But other courts have found that the fact that "equitable tolling issues often arise in other FLSA actions is sufficient to send notice to the larger group." Knox v. John Varvatos Enterprises Inc., 282 F. Supp. 3d 644, 661 (S.D.N.Y. 2017) (internal quotation marks omitted) (collecting and rejecting cases that have allowed equitable tolling).

As did the court in Knox, this Court disagrees with those decisions that effectively eliminate the requirement of extraordinary or unique circumstances giving rise to potential for

equitable tolling in FLSA cases. The Second Circuit has made clear that equitable tolling is

reserved for "rare" circumstances, and to disregard that instruction here would create "a rule that

simply assumes that equitable tolling will be routinely available in all FLSA cases." Id.

Although articulated in an entirely different legal context, the Supreme Court has

instructed that equitable tolling is not a "cure-all for an entirely common state of affairs."

Wallace v. Kato, 549 U.S. 384, 396 (2007). If Congress wanted to toll the statute of limitations

for opt-in plaintiffs under the FLSA as a means of avoiding the very scenario that plaintiff argues

warrants equitable tolling here, Congress would have included such a provision in the statute. It

did not, and plaintiff has not shown why their case is any different from a regular, run-of-the-mill

FLSA collective action.

Plaintiffs' motion for equitable tolling of the statute of limitations is denied.

## IV.    Notice of Attorneys' Fees

Defendants request that if the sending of notice is approved, plaintiff's proposed notice

must be amended to state the terms of plaintiff's proposed arrangement with any opt-in members

of the class, as was ordered in Fasnelli v. Heartland Brewery, 516 F. Supp. 2d 317, 324

(S.D.N.Y. 2007).

A modest adjustment of plaintiff's proposed notice is warranted. The current proposed

notice states that the case is being handled "on a 'contingency fee' basis, which means that you

do not have to pay attorneys' fee or expenses for this lawsuit." I know that construction is

routinely used to solicit personal injury claims, but I think it is somewhat misleading. Of course

an opt-in plaintiff, like the named plaintiff, will, in fact, pay attorneys' fees if the case is

successful – it may be deducted from the plaintiff's recovery. In addition, costs may be

advanced by the attorney, and repayment may be contingent on the outcome of the case. See

Ghodooshim v. Qiao Xing Mobile Communication Co., Ltd., No. 12-cv-9264, 2013 WL

2314267, at *2 (S.D.N.Y. May 21, 2013).  Thus, if the case is unsuccessful, the plaintiff may

bear those costs, unless he lacks the funds for the attorney to obtain reimbursement.

**CONCLUSION**

Plaintiff's motion for conditional certification is granted except to the extent that it seeks

to provide notice to "non-management employees."  The notice shall be sent to employees who

are delivery persons, porters, or chefs, including employees whose responsibilities include any of

those tasks.  In addition, within ten days, the parties are directed to agree on a revision of

plaintiff's proposed notice to clarify how a contingent fee arrangement would work should any

opt-in plaintiff choose to retain plaintiff's counsel.

**SO ORDERED.**

Digitally signed by Brian
M. Cogan

_____
U.S.D.J.

Dated:  Brooklyn, New York
        December 26, 2018